**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**LITTLE LAKE MISERE LAND COM-**
**PANY, Inc., et al., Defendants-**
**Appellees.**

No. 71-2425
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 30, 1971.

---

* ▮ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 491 F.2d 409.

Donald E. Walter, U. S. Atty., D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Shiro Kashiwa, Asst. Atty. Gen., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., Gerald J. Gallinghouse, U. S. Atty., New Orleans, La., Howard O. Sigmond, Peter R. Steenland, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Richard E. Gerard, Lake Charles, La., Austin W. Lewis, Roger H. Doyle, Gene W. LaFitte, Liskow & Lewis, New Orleans, La, for defendants-appellees.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

## PER CURIAM:

The United States filed suit to quiet title to various properties owned by the United States subject to mineral reservations in favor of the various parties defendant. Title to the properties was acquired by the United States in one instance by purchase on July 23, 1937, and in the other instance by judgment in condemnation proceedings on August 30, 1939. Both acquisitions were for the purpose of creating a part of the Lacassine Wildlife Refuge, a bird sanctuary in Cameron Parish, pursuant to the Migratory Bird Treaty, 16 U.S.C. § 703, and the Migratory Bird Conservation Act, 16 U.S.C. § 715 et seq. In each case the United States reserved to the landowners from whom the properties were acquired, certain mineral interests for a term of 10 years and as long thereafter as production or drilling continued. The pertinent reservation contained in the written act of sale is set out in the margin.[1] The mineral reservation contained in the judgment of condemnation is substantially the same as that contained in the act of sale. It was stipulated that there had been no drilling on the properties within 10 years from the date of creation of the mineral reservations. The only issue is whether the reservations created imprescriptible mineral servitudes within the meaning of Act 315 of 1940 of the Louisiana Legislature, La. R.S. 9:5806(A), or whether they were extinguished by 10 years of nonuser.[2]

1. "Reserving unto the grantor, its successors, legal representatives and assigns, and specifically excepting from this acquisition all the oil, gas, sulphur and other minerals in, on or under said land, together with the right of investigating, exploring, prospecting, drilling and mining for and producing said oil, gas, sulphur and other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures, thereon to produce, save, take care of, treat, store, transport and manufacture said minerals and housing the employees necessary for said purposes; which rights shall remain in force for a term of ten (10) years from the date of vesting of title in the United States and as long thereafter as oil, gas, sulphur or other mineral is produced from said land, or so long thereafter as grantor shall conduct drilling or reworking operations thereon with no cessation of more than sixty (60) days consecutively until production results; and, if production results, so long as such mineral is produced.
"Provided further that at the end of said ten-year period of reservation, if not extended as hereinabove provided, or at the termination of any extended period in case the operation has not been carried on after said ten-year period as hereinabove provided, the right to mine, produce and market said oil, gas, sulphur or other minerals shall terminate at the end of said ten years, and the complete fee title to said lands shall thereby become vested in the United States."

2. Act 315 of 1940 provides:
"Section 1. Be it enacted by the Legislature of Louisiana, That when land is acquired by conventional deed or contract, condemnation or expropriation proceedings by the United States of America, or any of its subdivisions or agencies, from any person, firm or corporation, and by the act of ac-

The District Court held that "[c]learly, the provisions of the reservations in the instant cases reveal that the parties were stipulating for a period of contractual prescription for the conditional extinguishment of the mineral servitudes." Thus, under Act 315 the mineral reservations were imprescriptible. The District Court considered himself bound by our former opinion in the case of Leiter Minerals, Inc. v. United States, 5 Cir., 1964, 329 F.2d 85, vacated as moot, sub nom., United States v. Leiter Minerals Inc., 381 U.S. 413, 85 S.Ct. 1575, 14 L.Ed.2d 692 (1965). The United States argues that *Leiter* is of no precedential value because of the Supreme Court's dismissal as moot. The Government argues that Leiter was incorrectly decided by us and should now be reversed. We disagree and affirm the judgment of the lower court on the basis of the principles enunciated by Judge Rives for the Court in *Leiter*.

Finally, the Government contends that if Act 315 is interpreted so as to "extend" the grantors' or condemnees' servitude in the minerals, it would be unconstitutional as impairing the obligations of contract; as derogating the supreme power of the Federal Government to acquire a precise estate by condemnation or purchase; and as hostile and discriminatory against the United States in the acquisition of an interest in land. The first and second points have been rejected by us in United States v. Nebo Oil Co., 5 Cir., 1951, 190 F.2d 1003. The principles enunciated in *Nebo* were reaffirmed by Judge Rives in *Leiter*, 329 F.2d at 94. As to the contention that Louisiana's Act 315 is hostile to the United States, we note that the same principle applies to acquisitions by the State of Louisiana, La. R.S. 9:5806 (B), and that the act really does noth-

ing more than place citizens of Louisiana in the same position as citizens of other states whose land has been purchased or condemned by the United States. We hold, therefore, that Act 315 is not unconstitutional. See United States v. Fox, 94 U.S. 315, 24 L.Ed. 192 (1877); United States v. Burnison, 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950). Cf. United States v. 1,078.27 Acres of Land, etc., 5 Cir., 1971, 446 F. 2d 1030.

Affirmed.

quisition, verdict or judgment, oil, gas, and/or other minerals or royalties are reserved, or the land so acquired is by the act of acquisition conveyed subject to a prior sale or reservation of oil, gas and/or other minerals or royalties, still in force and effect, said rights so reserved or previously sold shall be imprescriptible.

"Section 2. That Act 68 and Act 151 of 1938 and all other laws or parts of laws, general or special, in conflict herewith are hereby repealed."